UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DERRICK GRANTLEY,

     Plaintiff,

v.                                          Case No. 3:17cv35-MCR-HTC

E L SAM, M NICHOLS and
A ENFINGER,

     Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Derrick Grantley ("Plaintiff" or "Grantley"), a prisoner at Santa Rosa Correctional Institution ("Santa Rosa CI"), brings this action against Defendants under 28 U.S.C. § 1983 for allegedly violating his Eighth Amendment rights. Specifically, Grantley contends Defendants acted with deliberate indifference to his need for medical attention after he threatened to cut himself, actually cut himself and allegedly swallowed a razor blade. ECF Doc. 12 at 14. This matter is before the Court on the parties' competing motions for summary judgment (ECF Docs. 58, 69), the responses thereto (ECF Docs. 70, 75) and the corresponding replies (ECF Docs. 76, 77). For the reasons which follow, the undersigned recommends that Plaintiff's motion for summary judgment be DENIED and that Defendants' motion for summary judgment be GRANTED.

## I.    Summary Judgment Facts

Defendant Erika L. Sam ("Sam"), a mental health professional, performed a mental health screening evaluation on Plaintiff on March 26, 2014. ECF Doc. 68-1 at 4-5 (Sam Affidavit). Notes from Sam's evaluation indicate that "[d]uring transit at NWFRC on 3/12/14 I/M cut himself resulting in an outside hospitalization for 6 days." *Id.* at 5. The notes state, "I/M reported he will cut or act out to get himself placed back on maximum management with the express purpose of being able to return to FSP." *Id.* Sam's notes also indicate that "I/M did not report experiencing depressed mood or psychotic symptoms," that she consulted with "Sr. Psychologist, Dorm Lieutenant notified of the seriousness of I/M's cutting history," and that "Psychological Services Director is also aware of this I/M and has reported that this I/M will remain at Santa Rosa CI." *Id.*

On April 7, 2014, Plaintiff made a report to the grievance coordinator that "he was feeling suicidal/homicidal and was going to attempt suicide by cutting his arms with a razor blade and bleeding out." ECF Doc. 12 at 10; ECF Doc. 68-1 at 6. Sam met with Grantley again and her notes indicate Grantley stated, "I need to be on SHOS[1], that will stop me from getting something to cut with. I don't really want to

---

[1] SHOS" stands for "Self-Harm Observational Status." ECF Doc. 58 at 5.

cut but I know that I'm going to.  I feel like hurting someone.  I have been through enough.   I really don't feel like going all in and going back to maximum management, so I figured I would try this way first."  ECF Doc. 68-1 at 6; *see also* ECF Doc. 12 at 10.  Sam's notes indicate Plaintiff also stated "he would cut in order to get himself transferred back to FSP."[2]  ECF Doc. 68-1 at 6.  Sam further noted in the records that "Dr. Yun[3] called regarding I/M suicidal/homicidal threats.  I/M was returned to Security as I/M has made it clear that his motive is to get moved from Santa Rosa and ultimately to go back to FSP."  *Id.*; ECF Doc. 12 at 10.

After returning to his cell, Plaintiff obtained a razor blade and, at approximately 11 p.m., cut three lacerations into his right arm and two into his left. ECF Doc. 58 at 57 (Exhibit E); ECF Doc. 12 at 11.   Plaintiff contends he lost consciousness because of the blood loss.  ECF Doc. 58 at 2.  Plaintiff claims when he was found, there "was vomit everywhere" and "the vomit had blood in it as well." ECF Doc.12 at 11.  Plaintiff was "awaken[ed] by medical staff and officers and taken to the emergency room, where he was treated by Defendant Alecia Enfinger

---

[2] In his response to Defendants' motion, Plaintiff disagrees that he had a history of cutting himself while he was at Santa Rosa CI and further disputes that he did so to get moved.  *See, supra,* fn. 10.

[3] Dr. Yun was initially identified as a defendant and was dismissed because he is deceased and Plaintiff did not substitute a proper party as required under Fed. R. Civ. P. 25.

("Enfinger"),[4] a registered nurse. *Id*. Grantley told Enfinger he had swallowed a razor blade. *Id*.

Enfinger "treated the wounds with steri-strips and pressure bandages until he could be seen by a physician or nurse practitioner," stabilized Plaintiff and "contacted the prison physician, Dr. Delgado for orders, which were that Mr. Grantley be put on self-harm observation status with 15-minute checks." ECF Doc. 68-2 at 2 (Enfinger Affidavit). Additionally, Enfinger "examined Mr. Grantley on his claim of swallowing a razor blade," and "found no bleeding from the mouth and there was no indication of internal bleeding." *Id*. Thus, Enfinger concluded that "the proper medical care is observation and referral to a practitioner." *Id*. The primary dispute between Enfinger's affidavit and Plaintiff's allegations is whether Plaintiff vomited blood in front of Enfinger, as he contends. *Compare* ECF Doc. 68-2 at 2 and ECF Doc. 12 at 11. The parties otherwise do not dispute what treatment was and was not provided.

The next day, Defendant Marsha Nichols (Nichols), an advanced registered nurse practitioner (ECF Doc. 68-3 at 1 (Nichols Affidavit)), treated Grantley by

---

[4] Enfinger's last name was "Craft" at the time of the incidents in this case, *see* ECF Doc. 37 at 1 n.1, so Plaintiff used that last name in his second amended complaint. ECF Doc. 12.

placing thirteen sutures in Plaintiff's right arm.  ECF Doc. 12 at 11.  Plaintiff

contends he "advised Nichols that he had swallowed a Razor Blade and that the blade

was poking him in the stomach and causing excruciating pain." *Id.*  According to

Nichols, "[p]atients sometime swallow razor blades" and "the treatment is

observation until the blade passes" because "[t]here is virtually no chance of internal

damage once the blade passes the esophagus, and damage to the esophagus is itself

rare" and surgery "is a last resort, as it carries complications of bleeding, infection,

morbidity and death."  ECF Doc. 68-3 at 2.  Plaintiff, therefore, was placed into

observation "for passing the razor blade he claimed to have swallowed."[5] *Id.*

On May 7, 2014, an x-ray was ordered.  ECF Doc. 68-3 at 12.  Plaintiff

contends Nichols ordered the x-ray under pressure from his attorneys.  ECF Doc. 12

at 12.  No razor blade was found.  *Id.*  Plaintiff was returned to his cell in the general

population.  *Id.* at 11.  Then, Plaintiff was given a blood test in August of 2014 while

---

[5] Plaintiff was then placed in a self-harm observation status cell.  ECF Doc. 12 at 11-12.  On April
16, 2014, correctional staff removed the blanket and mattress from Plaintiff's cell.  *Id.* at 12.
Plaintiff claims he was, thus, forced to sleep on a "hard concrete floor for approximately 21 days
causing Plaintiff to experience excruciating pain in his back, neck, and other parts of his body."
*Id.*  The parties disagree as to who ordered the removal of these items.  Regardless, these
allegations are not material to the elements or merits of Plaintiff's deliberate indifference claims.
Additionally, according to Nichols, the removal of mattresses and blankets was "commonly done
with patients of this type because it reduces the places where razor blades can be hidden," (ECF
Doc. 68-3 at 2), a position that is not disputed by Plaintiff.

he was at the Northwest Florida Reception Center to see an eye doctor. *See* ECF Doc. 58 at 44 (Exhibit B at 11). The laboratory results show Plaintiff was low in hemoglobin and iron. ECF Doc. 75 at 74 (Exhibit 7). Plaintiff alleges he later "had to be placed on vitamin b-12, folic acid, and a 2800 calorie diet, on October 3, 2014, while Plaintiff was being housed at the Reception and Medical Center for the eye doctor." ECF Doc. 58 at 12. Also, in November of 2014, Plaintiff was given a hemoccult test which was positive for the presence of blood in his stool. ECF Doc. 58 at 71 (Exhibit H).

As a result of the hemoccult test, Plaintiff was examined by Nichols on December 9, 2014. ECF Doc. 12 at 33; ECF Doc. 68-3 at 3. Plaintiff and Nichols' memory of that examination differ, but those differences are not material to the elements of Plaintiff's claim against Nichols. What is not in dispute is that Nichols sought consent for a rectal examination to identify the presence of hemorrhoids, which could be the cause of blood in the stool, and which Plaintiff refused. ECF Doc. 68-3 at 3. Plaintiff contends the request for consent was a guise to harass him while Nichols contends it was the appropriate procedure for identifying blood in the stool. ECF Doc. 12 at 13.

## II.    Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In applying this standard, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party.  *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of fact is "material" if it might affect the outcome of the case under the governing law.  *Id.*  An issue is "genuine" if the record taken as a whole could lead a rational fact finder to find for the non-moving party.  *Id.* "[T]he nonmoving party cannot create a genuine issue of material fact through speculation, conjecture, or evidence that is 'merely colorable' or 'not significantly probative.'"  *Vega v. Invsco Group, Ltd.*, 432 F. App'x 867, 869-70 (11th Cir. 2011).

In support of Defendants' motion, Defendants submit their affidavits as well as Grantley's medical records.  In support of Plaintiff's motion, he relies upon sworn discovery responses and the allegations in his second amended complaint.  *See*

*Howard v. Memnon*, 572 F. App'x 692, 694 (11th Cir. 2014) (a document filed by plaintiff, "if verified under 28 U.S.C. § 1746, is equivalent to an affidavit, and thus may be viewed as evidence"); *Kelly v. Ambroski*, 97 F.Supp.3d 1320, 1329 (N.D. Ala. 2015), quoting *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986) ("any 'specific facts' pled in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment").

## III.    Legal Discussion

A prisoner bringing suit under the Eighth Amendment for deprivation of medical care must show "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Danley v. Allen*, 540 F.3d 1298, 1310 (11th Cir. 2008).

Based on the undisputed facts, viewing the evidence in the light most favorable to the non-moving party, and for the reasons set forth below, the undersigned finds there is no genuine issue of material fact that Plaintiff cannot establish any of the three (3) elements of his Eighth Amendment claim as to any of the Defendants. Plaintiff's claims are based on a dispute over the adequacy of the treatment provided to him and as the Eleventh Circuit has held, "federal courts are generally reluctant to second guess medical judgments and to constitutionalize

claims that sound in tort law." *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985).

### A.    Defendant Sam Is Entitled to Summary Judgment.

Plaintiff alleges Sam violated his Eighth Amendment rights by returning Plaintiff to his cell on April 18, 2014, after he had threatened to harm himself.  ECF Doc. 12 at 14.  Sam seeks summary judgment on the ground that it was the prison psychologist, Dr. Yun, not her, who made the decision to return Grantley to his cell. ECF Doc. 69 at 10.  Sam relies upon her affidavit and Grantley's medical records. Plaintiff relies solely on the following allegation in his second amended complaint: "Plaintiff later learned on July 31, 2014, after receiving copies of his medical records, … that defendant Sam and Defendant Yun, both made the decision on April 8, 2014 to return plaintiff back to correctional staff, to be returned to Plaintiff's same cell…."  ECF Doc. 12 at 10.  Although Plaintiff cites to the medical records as his source of information, Plaintiff does not point the Court to any specific portion of the medical records and the undersigned was unable to identify any support for Plaintiff's allegation in the medical records.  Instead, the medical records indicate that Plaintiff knew Dr. Yun was the one with decision making power, telling Sam in March, "[t]he only reason I stopped cutting right now is because of Dr. Yun, because I know he got the power to move me…."  ECF Doc. 69-1 at 5.

Case No. 3:17cv35-MCR-HTC

Moreover, Plaintiff acknowledges in his second amended complaint that Sam advised him "she was going to call defendant Yun, and see what he wanted to do as far as placing the plaintiff on self harm observation status, regarding plaintiff's threats of being suicidal/homicidal." ECF Doc. 12 at 10.  This statement is consistent with Sam's affidavit, which confirms she contacted Dr. Yun and that he ordered Plaintiff be released from observation.  ECF Doc. 68-1 at 2.  It is also consistent with Sam's notes from the April 8 meeting, where she references a telephone call with Dr. Yun.  ECF Doc. 68-1 at 6.  Plaintiff's allegation to the contrary is conclusory and thus insufficient to create a genuine issue of material fact.  *See Lloyd v. Card*, 283 F. App'x 696, 701 (11th Cir. 2008) (citing *Marshall v. City of Cape Coral, Fla.*, 797 F.2d 1555, 1559 (11th Cir. 1986) ("inferences based upon speculation are not reasonable")).  Since Sam did not make the decision to return Plaintiff to his cell, Plaintiff's deliberate indifference claim as to Sam must fail.  *See Danley*, 540 F.3d at 1310 (11th Cir. 2008) (plaintiff must show "causation between that indifference [i.e., a defendant's action or failure to act] and the plaintiff's injury").

**B.    Defendants Enfinger and Nichols Are Entitled to Summary Judgment**.

Plaintiff's claims against Enfinger and Nichols are similar and thus will be addressed together.  Plaintiff claims they did <u>"NOTHING"</u> to treat him for the

alleged swallowed razor blade. ECF Doc. 75 at 12; 19; ECF 58 at 13, 15. As to Enfinger, Plaintiff takes issue with her failure to send him to an outside hospital, failure to conduct daily radiographs on him and failure to examine his stool. ECF Doc. 75 at 12.[6] As to Nichols, Plaintiff takes issue with her failure to "order[] any laboratory test, stool test or radiographs." ECF Doc. 75 at 17. He admits Nichols treated him by "monitoring" him.[7] ECF Doc. 75 at 14.

Deliberate indifference has three components: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere

---

[6]  In Plaintiff's second amended complaint, Plaintiff also alleges Enfinger "fail[ed] to provide Plaintiff with pain medication for pain in the arms and stomach… [and] fail[ed] to treat Plaintiff for cuts to his arms and ensure that Plaintiff immediately received sutures for cuts to his arms." ECF Doc. 12 at 14. He appears to have abandoned these allegations in his reply to Enfinger's motion (ECF Doc. 75 at 10-14) as well as in his motion for summary judgment. ECF Doc. 58 at 10-13. Regardless, those claims do not rise to the level of deliberate indifference because Plaintiff does not dispute Enfinger applied steri-strips and pressure bandages to his lacerations and stabilized him. ECF Doc. 68-2 at 2. Plaintiff further does not dispute that Advil and Tylenol were available to Plaintiff from the nurse's station and does not argue that those medications were insufficient to address his pain." ECF Doc. 58 at 30 (Exhibit A at 8); at 41 (Exhibit B at 9).

[7] Plaintiff also makes other allegations against Nichols, including that she failed to suture his left arm, failed to numb his right arm, and allegedly harassed him by seeking consent for her to perform a rectal exam on him. ECF Doc. 12 at 14. These allegations, however, are not material to the elements of Plaintiff's deliberate indifference claim. Moreover, Nichols does not dispute she did not suture his left arm or numb his right but explains that his left arm did not require sutures and the cuts on his right arm were in areas of old scar tissue which have no feeling and numbing the area would have required as many pricks as the sutures. ECF Doc. 68-3 at 2. Plaintiff does not dispute this explanation. Plaintiff also does not dispute Nichols' contention that rectal exams are an appropriate procedure for determining whether there is blood in the stool as could be caused by hemorrhoids. ECF Doc. 68-3 at 3.

negligence." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). Plaintiff cannot establish any of those elements as to Nichols or Enfinger.

Plaintiff's claims against Nichols and Enfinger are premised on his contention that he was bleeding internally and that such condition is a serious medical need. Plaintiff's premise, however, is not supported by the record evidence. "A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Boone*, 665 Fed.Appx. at 775, quoting *Farrow,* 320 F.3d at 1245. Plaintiff had not been diagnosed with internal bleeding and given the lack of any outward indications that Plaintiff was suffering from an internal bleed, a lay person would not have easily recognized the necessity for addition medical attention. Indeed, Plaintiff has not presented any evidence other than his conclusory allegations that he suffered from an internal bleed.[8] Plaintiff's conclusory allegations are further rebutted by the subsequent radiology report, which was negative for a razor blade or "evidence of acute abdominal pathology." ECF Doc. 68-3 at 12.

---

[8] Based on the blood test, hemoccult test results and prescribed diet, Plaintiff concludes that "it's clear the internal bleeding was a result of Plaintiff swallowing [a] razor blade on April 8, 2014." ECF Doc. 58 at 13.

Even assuming Plaintiff could establish he suffered from a serious medical need, the first element requires "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Here, there is further no evidence that Nichols or Enfinger had actual knowledge that Plaintiff was suffering from a risk of serious harm and disregarded that risk by conduct that is more than gross negligence. *See Farrow*, 320 F.3d at 1245. Specifically, there is no evidence Enfinger or Nichols had actual knowledge that Plaintiff was bleeding internally. Enfinger, for example, states she did not observe any blood in his vomit, found no bleeding from the mouth and no indication of internal bleeding. ECF Doc. 68-2 at 2. Additionally, according to Nichols, "less than 1%" of prisoners who swallow razor blades require surgery. ECF Doc. 68-3 at 2. Plaintiff argues that Defendants were actually aware of the serious harm that could be caused by swallowing a razor blade and points to Defendants' responses to requests for admissions nos. 24 and 25. ECF Doc. 58 at 12. These responses, however, provide no such evidence, and only further support Defendants' positions. In response number 24 Defendants admit that internal bleeding is a *potential* complication and in response number 25, Defendants simply admit that "in the very *rare* circumstances death is a *potential* complication of swallowing a razor blade."

ECF Doc. 58 at 39. These responses do not show that Defendants were actually aware of a serious harm. *See Farmer*, 511 U.S. at 837 (official must be actually aware of the harm).

Regardless, neither Nichols nor Enfinger disregarded Plaintiff's complaint that he swallowed a razor blade. They simply chose a course of treatment other than what Plaintiff would have preferred. Enfinger states that "the proper medical care is observation and referral to a practitioner, which was done ...." ECF Doc. 68-2 at 2. Similarly, Nichols states "Mr. Grantley was observed for passing the razor blade he claimed to have swallowed"[9] and explained "the treatment is observation until the blade passes [because] [t]here is virtually no chance of internal damage once the blade passes the esophagus, and damage to the esophagus is itself rare." ECF Doc. 68-3 at 2. The fact that Enfinger and Nichols chose to monitor or observe Plaintiff for the razor blade, rather than send him to an outside hospital or order an x-ray does not "run counter to evolving standards of decency or involve the unnecessary and wanton infliction of pain to be actionable under § 1983." *See Kelly*, 97 F.Supp.3d at 1339; *Adams v. Poag*, 61 F.3d 1537, 1544-45 (11th Cir. 1995) (deliberate

---

[9] The medical records from April 28, 2014, indicate Enfinger told Nichols Plaintiff had "passed the object he was cutting with." ECF Doc. 68-3 at 9. Nichols went to Grantley's cell, and he denied having passed anything and stated he had no idea what Defendant Nichols was talking about. *Id.* Plaintiff also advised that he was "fine," so Plaintiff was continued on observation. *Id.*

indifference exists where treatment was "so grossly incompetent, inadequate or excessive as to shock the conscience."). Plaintiff's disagreement over the treatment provided does not support a claim of deliberate indifference. *See Boone,* 665 F. App'x at 775, citing *Estelle v. Gamble*, 429 U.S. 97, 107-08 (1976) ("A medical decision not to pursue a particular course of diagnosis or treatment is a classic example of a matter for medical judgment, an exercise of which does not represent cruel and unusual punishment."). A plaintiff's preference for different medication or a different course of treatment does not state a claim of deliberate indifference. *See Harris v. Thigpen*, 941 F.2d 1495, 1504-05 (11th Cir. 1991) (stating that as long as the medical treatment provided is "minimally adequate," a prisoner's preference for a different course of treatment does not give rise to a Constitutional violation). Indeed, the fallacy of Plaintiff's claims is best gleaned through the following statement contained in his response to Defendants' motion: "Enfinger clearly took what she thought was an easier but less efficacious course of treatment . . . ." ECF Doc. 75 at 14. Taking a less "efficacious course of treatment" does not rise to the level of deliberate indifference. *See Loadholt*, 844 F. Supp. 2d at 1282 ("[t]o sustain his charge of deliberate indifference, then, Plaintiff must allege facts beyond those showing a professional disagreement").

At best, the decision to observe or monitor Plaintiff to pass the razor blade may have been negligent, but that is not the equivalent of deliberate indifference. *See Hill v. Dekalb Regional Youth Detention Center*, 440 F.3d 1176, 1191 n. 28 (11th Cir. 1994) (deliberate indifference requires more than negligence, it requires subjective recklessness); *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (allegations of negligence and medical malpractice do not state a plausible claim for relief under the Eighth Amendment or § 1983). Accordingly, summary judgment should be granted for Enfinger and Nichols and against Plaintiff on his claims against them.

## IV.   Conclusion

Accordingly, it is respectfully recommended that:

1.    Plaintiff's motion for summary judgment (ECF Doc. 58) be DENIED.

2.    Defendants' motion for summary judgment (ECF Doc. 69) be GRANTED.

3.    The clerk be directed to enter the following judgment: "Summary judgment is entered in favor of all Defendants on all of Plaintiff's claims."

4.      The clerk be directed to close the file.

DONE AND ORDERED this 3rd day of May, 2019.


*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**


NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. A copy of objections shall be served upon the magistrate judge and all other parties. A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. See 11th Cir. R. 3-1; 28 U.S.C. § 636.